IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

SHANE A. LONIX                                                                                    PLAINTIFF
ADC #145216

v.                                           5:19cv00341-DPM-JJV

DERNITTA THOMAS, Lieutenant, Shift                                                     DEFENDANTS
C, ADC Administration, Cummins Unit, *et al*.

### PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to Chief United States District Judge D.P. Marshall Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen days from the date of the findings and recommendations. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

Mail your objections to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

### DISPOSITION

### I.  INTRODUCTION

Shane A. Lonix ("Plaintiff"), in custody at the Cummins Unit of the Arkansas Division of Correction ("ADC"), is proceeding *pro se* in this 42 U.S.C. § 1983 action. (Doc. No. 2.) He sued

multiple ADC officials in their personal and official capacities. (*Id.*) Plaintiff's claims against Defendants James, Nunag, Taylor, Fortson, and Does were dismissed without prejudice. (Doc. Nos. 5, 10). Plaintiff's excessive force claims against Defendants Thomas, Quillen, and Bryant were served. (Doc. Nos. 5, 6.)

Defendants Thomas, Quillen, and Bryant (collectively "Defendants") now have filed a Motion for Summary Judgment. (Doc. Nos. 69-71, 73.) Plaintiff has responded (Doc. Nos. 74, 78) and this matter is ripe for a decision. After careful consideration, I recommend Defendants' Motion be granted and Plaintiff's claims dismissed without prejudice.

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a

reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. ANALYSIS

Plaintiff, a prisoner in the ADC, alleges Defendants used excessive force against him. Specifically, he claims Defendant Thomas tased him while he was face down on the ground as Defendants Quillen and Bryant beat him. (Doc. No. 2 at 5, 10, 19-20.)

#### A. Excessive Force

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). The core judicial inquiry in an excessive force claim is whether the force was used in a "good-faith effort to maintain or restore discipline, or was instead used maliciously and sadistically to cause harm." *Flemons v. Devane*, 779 Fed. Appx. 423, 425 (8th Cir. 2019) (per curiam) (*citing Wilkins v. Gaddy*, 559 U.S. 34, 36-39 (2010)). In making this inquiry, courts consider: "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of the injury inflicted . . . ." *Jackson*, 866 F.3d at 974. Pain inflicted during a prison security measure is not cruel and unusual punishment only because in hindsight the degree of force used for security purposes was unreasonable. *Ward v. Smith*, 844 F.3d 717, 721 (8th Cir. 2016) (*quoting Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Rather, guards will liable only "if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically.'" *Id*. (internal citation omitted). "Whether the force used was reasonable is 'judged from the perspective of a reasonable officer on the scene' and in light of the

particular circumstances." *Story v. Norwood*, 659 F.3d 680, 686 (8th Cir. 2011) (*quoting Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

### B. Qualified Immunity

Defendants contend they are entitled to qualified immunity on Plaintiff's personal capacity claims against them. (Doc. No. 70 at 6.) Qualified immunity protects government officials who acted in an objectively reasonable manner and shields an official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236). Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Id*.

### C. Facts Alleged

Defendants assert the following undisputed facts, among others. On September 20, 2019, Plaintiff was housed in Barracks 8B at the Cummins Unit of the Arkansas Division of Correction. (Doc. No. 71 at ¶ 3; Doc. No. 69-1 at 11:6-25.) On that day, Defendants Bryant and Quillen entered the guard booth of 8B barracks at approximately 1:12 p.m. to determine Plaintiff's exact location. (Doc. No. 71 at ¶ 4; Doc. No. 69-2 at ¶3; Doc. No. 73, Exhibits 1 and 2.) Moments later, they exited the guard booth into the hallway and then entered 8B barracks to place Plaintiff in hand restraints due to a disciplinary charge. (Doc. No. 71 at ¶¶ 5-6; Doc. No. 69-2 at ¶¶ 2-4; Doc. No. 73, Exhibit 1 at 1:12:18-1:13:06; Doc. No. 69-4 at 7.) Surveillance video from inside 8B barracks shows Defendant Quillen approach Plaintiff, who is standing near the doorway of 8B barracks. (Doc. No. 71 at ¶ 11; Doc. No. 73, Exhibit 2 at 1:10:00 p.m.) As Plaintiff and Defendant Quillen approach one another, Defendant Quillen directed Plaintiff to submit to hand restraints, but Plaintiff refused. (Doc. No. 71 at ¶ 12; Doc. No. 69-2 at ¶¶ 10-11; Doc. No. 69-4 at 3, 5, 7, 13.) Plaintiff approached Defendant Quillen and punches him twice on the left side of the face with his closed-fist right hand.[1] (Doc. No. 71 at ¶ 13; Doc. No. 73, Exhibit 2 at 1:10:02 p.m.; Doc. No. 69-2 at ¶ 11; Doc. No. 69-4 at 3, 5, 7, 13.) Plaintiff admits throwing the first punch. (Doc. No. 69-1 at 21:3-8.)

After Plaintiff struck Defendant Quillen, Defendant Bryant approached Plaintiff, who was standing in a "boxing stance" as if prepared to fight. (Doc. No. 71 at ¶ 15; Doc. No. 73, Exhibit 2 at 1:10:02 p.m.) The two became engaged in a physical altercation. (Doc. No. 71 at ¶ 16; Doc. No. 73, Exhibit 1 at 1:13:56 and Exhibit 2 at 1:10:03.) Defendant Bryant struck Plaintiff with a

---

[1] It appears to me that Plaintiff hit Defendant Quillen once with his left fist and once with his right fist. If that is correct, the discrepancy is of no consequence. Plaintiff was the aggressor and struck Defendant Quillen twice.

closed fist and pulled him out of the barracks where they both fell into the hallway area. (Doc. No. 71 at ¶ 18; Doc. No. 73, Exhibit 1 at 1:13:56 and Exhibit 2 at 1:10:03; Doc. No. 69-2 at ¶ 13; Doc. No. 69-4 at 3, 13.) Officers are trained to remove a combative inmate from the barracks to a safer area away from other inmates, such as a hallway. (Doc. No. 71 at ¶ 19; Doc. No. 69-2 at ¶ 16.) A Code Three—a radio call of an assault on a staff member—was called. (Doc. No. 71 at ¶ 17.)

Once Defendant Bryant and Plaintiff were in the hallway, Plaintiff began striking Defendant Bryant in his face with a closed fist (Doc. No. 71 at ¶ 23; Doc. No 73, Exhibit 1 at 1:13:55 p.m. -1:13:59 p.m.) Plaintiff continued to resist after he is on the ground in the hallway, even as other officers, including Defendant Thomas, arrive. (Doc. No. 71 at ¶ 24; Doc. No. 73, Exhibit 1 at 1:13:58 p.m. – 1:14:08 p.m.) As other officers arrive, Plaintiff was given continuous orders to submit to hand restrains. (Doc. No. 71 at ¶ 25; Doc. No. 69-2 at ¶¶ 18, 20-21; Doc. No. 69-3 at ¶¶ 5-7.)

Plaintiff, however, continued to fight with officers, maneuvering from being on his stomach on the floor to laying on his back and attempting to kick officers. (Doc. No. 71 at ¶¶ 26, 28; Doc. No. 73, Exhibit 1 at 1:14:11 p.m. to 1:14:23 p.m.; Doc. No. 69-2 at ¶ 22; Doc. No. 69-3 at ¶¶ 5-7.) Given Plaintiff's refusal to comply, Defendant Thomas, who was standing at Plaintiff's feet, then drew her taser and gave Plaintiff warning that she was going to deploy it. (Doc. No. 71 at ¶¶ 27, 29; Doc. No. 69-3 at ¶ 8.) Defendant Thomas then deployed her taser, hitting Plaintiff in the lower back. (Doc. No. 71 at ¶ 30; Doc. No. 73, Exhibit 1 at 1:14:24 p.m. - 1:14:25 p.m.; Doc. No. 69-2 at ¶ 23; Doc. No. 69-3 at ¶ 9.) Plaintiff remained combative. (Doc. No. 69-2 at ¶ 24; Doc. No. 69-3 at ¶ 10.) Defendant Thomas tased Plaintiff a second time. (Doc. No. 71 at ¶ 33;

Doc. No 73, Exhibit 1 at 1:14:30 p.m. – 1:14:36 p.m.; Doc. No. 69-2 at ¶ 26; Doc. No. 69-3 at ¶ 12; Doc. No. 69-4 at 9, 16.) Plaintiff then began to comply with staff.

Plaintiff filed a Response to Defendants' Motion. (Doc. Nos. 74, 78.) In Plaintiff's first Response, he notes Defendants using the name "Bailey" in their Motion, which appears to be a Scrivener's error in the spelling of Bryant. (Doc. No. 74 at 1.) Plaintiff also disputes the way Defendants describe him refusing restraints from a seated position or being on his stomach face down. (*Id*.) Plaintiff did not, however, dispute the accuracy or authenticity of the video. Plaintiff further contests that Defendant Thomas warned him before she deployed her taser. (*Id*.) In Plaintiff's additional Response, Plaintiff did not controvert any material fact set forth by Defendants in their statement of undisputed material facts. (Doc. No. 78.) Rather, Plaintiff made new allegations of retaliation, conditions of confinement, and lack of medical care, and asked for a transfer out of Cummins. At this point, however, the only claim pending is excessive force. Plaintiff controverted only Defendants' description of him refusing restraints from a seated position or being on his stomach face down and that Defendant Thomas warned him before she fired her taser. (Doc. Nos. 74 78.) All other material facts submitted by Defendants (Doc. No. 71) are deemed admitted. Local Rule 56.1(c) of the Eastern and Western Districts of Arkansas; FED. R. CIV. P. 56(e).

D.    **No Genuine Issue of Material Fact**

At summary judgment, Plaintiff must support his allegations with evidence creating a genuine issue of material fact. *Wilson v. Smith*, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); *Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof

7

in affirming summary judgment in defendant's favor). Here, Plaintiff's allegations of excessive force are not supported by the video that captured the incident.

The video depicts Plaintiff throwing the first punch, unexpectedly hitting Defendant Quillen. Defendant Quillen did not respond in kind, but retreated. (Doc. No. 73, Exhibit 2 at 1:10:02 p.m.) Defendant Quillen witnessed the remainder of the scuffle, until Plaintiff's hands were restrained. But because I find neither Defendant Bryant nor Defendant Thomas used excessive force, whether Defendant Quillen tacitly collaborated in unlawful action is not an issue. (*See Flemons*, 779 Fed. Appx. at 425) (internal citation omitted).

By the time Defendant Bryant approached Plaintiff, it was clear Plaintiff did not want to submit to hand restraints. And it was also clear that Plaintiff was aggressive. As Defendant Bryant approached Plaintiff, Plaintiff was in a fighting pose; Defendant Bryant and Plaintiff became involved in a physical altercation with Plaintiff continuing to resist. (Doc. No. 73, Exhibit 2 at 1:10:02 p.m. - 1:10:15 p.m.) Plaintiff can be seen striking Defendant Bryant as the two brawled. (*Id*. at 1:10:06 p.m.) The scuffle moved into the hallway, where Plaintiff continued resisting. (Doc. No. 73, Exhibit 1 at 1:13:56.) Defendant Thomas deployed her taser, hitting Plaintiff in the lower back; Plaintiff still continued to resist. After Defendant Thomas deployed her taser a second time Plaintiff stopped resisting.

Under these circumstances, Defendants Bryant and Defendant Thomas used force to restore order and security. This was not an instance of Plaintiff's passive resistance or day-to-day policing of a prison though means of violence. *See Hickey v. Reeder*, 12 F.3d 754, 758-59 (8th Cir. 1993). Here, Plaintiff assaulted Defendant Quillen and resisted other efforts to restrain him. The amount of force reasonably necessary to subdue prisoners is not the same for all prisoners. As the Court of Appeals for the Eighth Circuit has explained:

> [w]e are not prepared to say that preemptive force cannot be resorted to in the case of prisoners whom corrections officers reasonably believe to be unusually violent. The question of excessiveness of force, in other words, cannot be assessed in a vacuum; it will vary from circumstance to circumstance. Officers are certainly not required in all cases to wait until they are attacked before they resort to force. Such a rule would expose them to an unnecessary and unreasonable risk of harm.

*McCrary-El v. Shaw* , 992 F.2d 809, 812 (8th Cir. 1993).

Defendants submitted a video of the incident and Plaintiff does not dispute its accuracy. After reviewing the video, I find this is exactly the type of violent scenario that entitles Defendants deference in their decision-making. *See Whitley v. Albers,* 475 U.S. 312 (1986). *See also Jasper v. Thalacker*, 999 F.2d 353, 354 (8th Cir. 1993) (no Eighth Amendment violation where stun gun used on inmate who threatened guard). It is Plaintiff who initiated this entire chain of events when he assaulted Defendant Quillen. Defendant Quillen was wholly taken by surprise when Plaintiff struck him in the face multiple times. Officers then became entangled in a somewhat lengthy and violent struggle attempting to subdue Plaintiff.

Taking into account the issues Plaintiff raised in his Response (Doc. Nos. 74, 78), there is nonetheless no genuine issue of material fact that would preclude summary judgment in Defendants' favor. I find that neither the way Defendants describe Plaintiff's resistance, or Defendant Thomas's alleged failure to warn before she deployed her taser, a material fact—a fact is material only if its resolution affects the outcome of a case. *Othman*, 671 F.3d at 675. The video evidence contradicts Plaintiff's version of events and conclusively shows that Defendants did not violate Plaintiff's constitutional rights. Accordingly, I find there are no genuine issues for trial. Defendants are, therefore, entitled to qualified immunity based on the circumstances particular to this case and summary judgment as a matter of law. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Plaintiff's excessive force claim against them should be dismissed with prejudice.

## IV. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 69) be GRANTED.

2. Plaintiff's claims against Defendants Quillen, Bryant, and Thomas be DISMISSED with prejudice.

3. This case be DISMISSED.

4. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations and the accompanying Judgment would not be taken in good faith.

DATED this 14th day of April 2021.

_____
JOE J. VOLPE
UNITED STATES MAGISTRSTE JUDGE